***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, and rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. AIG is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The claim was accepted by the carrier by Form 60 dated October 5, 2000.
5. The average weekly wage will be determined from a Form 22 to be submitted by defendants.
6. The contested issues before the Commission are:
 (a) Should defendants be ordered to approve a Functional Capacity Evaluation in light of the medical evidence of record?
 (b) Is plaintiff entitled to temporary partial disability compensation from March 15, 2001 to May 23, 2001 and temporary total disability compensation from May 23, 2001 to present and continuing?
7. The following stipulated exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
(A) Stipulated Exhibit 1: Pre-Trial Agreement
 (B) Stipulated Exhibit 2: A notebook of exhibits consisting of the following:
(a) Raleigh Community Hospital medical records
(b) Dhillon Orthopaedic medical records
(c) Triangle Spine Back medical records
(d) Hernia and foot work notes
(e) Duke University Medical Center medical records
(f) Industrial Commission File
(g) Plaintiff's Affidavit
(h) Industrial Commission's Response to Form 24
 (i) Dr. Charron's response to plaintiff's counsel's October 18, 2001 questions
(j) Plaintiff's light duty pay stubs
(k) MRI report from Duke University Medical Center
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-four year old male with a ninth grade education.
2. On August 2, 2000, plaintiff was employed by Domino's as a shift leader when he sustained an admittedly compensable injury by accident to his back. Plaintiff was pulling an approximately 1,500 pound bowl of dough from one station to the next when the wheel on the bowl caught in a spot on the floor. The increased resistance caused plaintiff to lose his footing and fall to the floor, injuring his back. Defendants accepted the claim pursuant to a Form 60.
3. Plaintiff treated at the emergency room and was referred to Dr. George M. Charron, an orthopaedic surgeon at Dhillon Orthopaedic and Sports Medicine Center. Plaintiff was initially diagnosed with and treated for lumbar back sprain and taken out of work. The carrier-defendant began paying temporary total disability compensation.
4. On September 14, 2000, plaintiff was released to return to work light duty with restrictions of no lifting more than 20 pounds and working no more than four hours per day. Plaintiff returned to light duty work and was paid temporary partial disability compensation.
5. At the end of October 2000, plaintiff attempted to return to full duty, but due to increased pain, he was returned to his previous light duty restrictions.
6. In November 2000, Dr. Charron ordered an MRI scan which showed dehydration of plaintiff's discs and a small herniation at L4-5 and L5-S1.
7. In February, 2001, plaintiff informed his supervisor that he would be out of work for approximately six weeks to have hernia surgery and right foot surgery that were unrelated to his workers' compensation claim. Plaintiff gave this notice approximately three weeks in advance of the surgeries.
8. On March 15, 2001, plaintiff went out of work for his unrelated surgeries. On this date, defendants stopped paying plaintiff compensation. Defendants have paid no partial or total disability benefits since this date.
9. While plaintiff was out of work for his unrelated surgeries, Dr. Charron released him to attempt a return to regular duty work for his workers' compensation injury.
10. After being released from his unrelated surgeries, plaintiff attempted to return to work on or about May 23, 2001. Defendant-employer refused to allow plaintiff to return to work without further certification from Dr. Charron allowing plaintiff to attempt to return to full duty. Plaintiff obtained the requested additional certification, and on or about June 30, 2001, he attempted a second time to return to work. Once again, defendant-employer did not allow plaintiff to return to work, this time stating that plaintiff needed to wait until he saw Dr. Michael Haglund, a neurosurgeon to whom he had been referred for a second opinion.
11. On July 12, 2001, plaintiff's counsel wrote a letter to Gena Booker, the adjuster for carrier-defendant, confirming that plaintiff was willing to attempt to return to work. Plaintiff's counsel also requested that temporary total disability benefits be reinstated if the employer was unwilling to allow plaintiff to return to work. Following this letter, defendants did not offer plaintiff employment nor were temporary total disability benefits reinstated.
12. Dr. Charron testified, "I think sometimes the only way to know how people are doing is to let them try to go back (to work)." Although he released plaintiff to attempt a return to full duty, "my opinion is he wouldn't have been successful going back to his old job." Dr. Charron recommended that plaintiff be retrained and that he seek lighter employment. Finally, Dr. Charron stated that an FCE would be helpful in determining plaintiff's work restrictions.
13. Plaintiff has not reached maximum medical improvement. Dr. Charron testified that he assigned plaintiff a seven percent (7%) rating to his back pursuant to AMA guidelines that require six months of medically documented pain "just . . . to get the paperwork done." Dr. Charron further testified, "I don't know if he was at maximum medical improvement." After assigning the rating, Dr. Charron continued to see plaintiff, referred him to a pain clinic, and referred him to Dr. Haglund for a second opinion.
14. At the time of the Deputy Commissioner hearing, Dr. Haglund had only seen plaintiff once for an initial evaluation. At this appointment, Dr. Haglund ordered an epidural injection, with plaintiff to follow-up with him four to six weeks after the injection. Dr. Hagland stated that if the epidural was unsuccessful in relieving plaintiff's pain, he would consider other types of treatment. Dr. Hagland further stated that once plaintiff's treatment is complete and he has reached maximum medical improvement, a functional capacity exam would be appropriate. As of Dr. Haglund's March 15, 2002 deposition, defendants had refused to authorize the epidural, additional treatment or the functional capacity evaluation.
15. The Form 22 "Statement of Days Worked and Earnings of Injured Employee" submitted by defendants is incomplete in that it fails to indicate the days that plaintiff worked. Despite being ordered by the Deputy Commissioner to submit a fully completed Form 22, defendants failed to do so. Based upon the Form 60, the Commission finds that plaintiff's average weekly wage is $470.00, which yields a compensation rate of $313.35.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 2, 2000, plaintiff sustained an injury by accident to his back arising out of and in the course of his employment. N.C. Gen. Stat. §§ 97-2(6), 97-18(b).
2. Defendants admitted compensability of plaintiff's injury by accident on October 5, 2000 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277; disc. rev denied, 353 N.C. 729,550 S.E.2d 782 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
4. In the present case, plaintiff, who has not reached maximum medical improvement, was released to attempt a trial return to work, but defendant-employer did not allow plaintiff to return to work or offer any employment. Further, Dr. Charron did not believe plaintiff could return to his regular job because of the required lifting and bending. Plaintiff established a loss of wage-earning capacity, and defendants have not shown that plaintiff is capable of earning wages in "lighter employment" as recommended by Dr. Charron, especially considering that plaintiff only has a ninth grade education. Accordingly, plaintiff is entitled to temporary total disability compensation from May 23, 2001 (the date defendant-employer refused to allow plaintiff to return to work) and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to temporary partial disability compensation for the period from March 15, 2001 through May 22, 2001. Plaintiff established a partial loss of wage-earning capacity while working light duty prior to going out of work for unrelated surgeries, and defendants offered no evidence to rebut this partial disability. N.C. Gen. Stat. § 97-30.
6. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including a functional capacity evaluation when determined appropriate by Dr. Haglund. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay temporary partial disability compensation to plaintiff at a rate of two thirds of the difference between his average weekly wage before the injury and the wages earned from March 15, 2001 through May 22, 2001. Because this compensation has accrued, it shall be paid in a lump sum.
2. Subject to the attorney's fee approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $313.35 per week from May 23, 2001 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
3. As plaintiff has not yet reached maximum medical improvement, this Opinion and Award does not address the issue of permanent partial disability. However, if in the future the parties are unable to reach an agreement regarding this issue, either party may request a hearing from the Commission.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due plaintiff and thereafter by deducting every fourth compensation check due plaintiff.
5. Defendants shall pay for medical expenses incurred or to be incurred as a result of the injury by accident as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including a functional capacity evaluation when determined appropriate by Dr. Haglund.
6. Defendants shall pay the costs due the Commission.
This ___ day of March 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd